232 So.2d 83 (1970)
Joseph D. WHITE et al., Plaintiffs-Appellants,
v.
PHILLIPS PETROLEUM COMPANY, Defendant-Appellee.
No. 2919.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1970.
Rehearing Denied February 4, 1970.
Writ Refused April 20, 1970.
*84 Broussard, Broussard & Moresi, by Marcus A. Broussard, Jr., Abbeville, for plaintiffs-appellants.
Bailey & Mouton, by Charles Bailey, Lafayette, for defendant-appellee.
Before TATE, CULPEPPER and MILLER, JJ.
MILLER, Judge.
Plaintiffs claim ownership of a one acre square tract of land in the southeast corner ofa 20 arpent tract which measures 2½ arpents east and west by 8 arpents north and south. The larger tract, which is in the Erath Field of Vermilion Parish, is under mineral lease to defendant, and this suit is for the recovery of the value of minerals produced by defendant from the one acre parcel in controversy.
Both plaintiffs and defendant trace their claims to a common author, P. J. Miller. Plaintiffs' ancestor in title acquired the one acre parcel by Act of Exchange executed *85 and recorded in the Conveyance Records of Vermilion Parish on November 13, 1929, wherein the tract in dispute was described as:
One certain tract of land lying and being situated in the Parish of Vermilion, State of Louisiana, containing One (1) Acre, and being taken in the Southeast (SE) Corner of a certain tract of land containing 20 arpents, more or less, measuring 2½ arpents East and West by 8 arpents North and South, more or less, and bounded North by P. Evilier Broussard, or assigns, East by Williams Jones et als., South by Rose Hill and West by Jessie White. Said One Acre of land being bounded North by Dr. Preston J. Miller, East by William Jones et als., South by Rose Hill and West by Dr. Preston J. Miller, and being a portion of the same property acquired by Preston J. Miller from Theodore Broussard, per deed recorded in Volume 87 at folio 403, under Entry No. 42,026 of the Conveyance Records of Vermilion Parish, Louisiana.
Defendant's mineral leases were granted on March 18, 1956 and on February 20, 1957. The first lease was acquired by defendant directly from Miller and the mineral lease described the entire twenty arpent tract. All but 2.729 acres in the northeastern portion of the twenty arpent tract was released. Defendant's second lease was granted by Miller to W. K. Smith (who later assigned to defendant) and covered the remainder of this same twenty arpent tract.
Defendant's first mineral lease as to the 2.729 acres and its second mineral lease as to the balance of the twenty arpent tract have been continuously maintained in force by production from Conservation Department units in the field. The one acre parcel claimed by plaintiffs is included in each unit except the 307.96 acre unit shown as Exhibit D-8.
The accuracy of the description of the twenty arpent tract in defendant's mineral lease is not disputed. and it includes the one acre tract claimed by plaintiffs appellants. Defendant does not question the description of the twenty arpent tract in the Act of Exchange by which plaintiffs' ancestor in title acquired the one acre tract.
The first issue is whether under the laws of registry prevailing in this State, the mineral leases of defendant take precedence over plaintiffs' acquisition. Plaintiffs claim that defendant's leases are subordinate to their acquisition by Act of Exchange as it was first executed and recorded. Defendant, although admitting that plaintiffs' deed antedates its mineral leases and preceded them of record, contends that the deed does not locate or identify the one acre parcel and that as a "purchaser" on the faith of the public records (McDuffie v. Walker, 125 La. 152, 51 So. 100 [1910]), it acquired full leasehold rights in the entire twenty arpent tract free and clear of plaintiffs' claims.
Is the description (one acre in the southeast corner of a tract containing 20 arpents more or less, measuring 2½ arpents east and west by 8 arpents north and south, more or less, said one acre being bounded north and west by vendor who previously owned the entire 20 arpent tract, and east and south by named neighboring property owners) so vague that it conveys nothing and third party "purchasers" purchasing from the party who conveyed by this description, can acquire from this same party the entire twenty arpent tract?
The trial court found that it was and dismissed plaintiffs' suit. On appeal, plaintiffs contend that their deed adequately described and locates the one acre in dispute; and alternatively, that the description used was sufficient to place defendant on notice that P. J. Miller, its lessor, owned twenty arpents LESS ONE ACRE and could lease no greater interest.
A most impressive argument is made by defendant that the parties to this Act of *86 Exchange (White and Miller) did not intend that the one acre parcel should be in the shape of a square. Defendant points to the fact that in the very Act of Exchange by which this one acre was conveyed by Miller to White, Miller also conveyed to White three other one acre tracts. Two of these one acre tracts were described as "* * * One (1) Acre square, and being taken from the Northeast corner * * *" and "* * * containing One (1) acre, square * * * and being in the southeast corner * * *". The other two one acre tracts were not so designated as to shape. We have quoted the description of the acre which is the subject of this suit. The description of the other one acre tract where the shape was not specified as square is:
"One certain lot or parcel of land lying and being situated in the Parish of Vermilion, State of Louisiana, containing One (1) Acre, of land, and being bounded North by Coulee Kinney, East by Preston J. Miller, or rather a fence erected by the said Preston J. Miller, separating his Dwelling house from his barn, said fence running North and South, from said Coulee Kinney to the Public Road, said acres of land being taken in the northern portion and adjoining the Coulee Kinney, and being a portion of the same property acquired by Preston J. Miller from Rodolph Guidry, per deed recorded in Volume 89, at folio 447, under Entry No. 43,096, Conveyance Records of Vermilion Parish, La."
Defendant has established that an "acre" is a unit of quantity, not form, comprising an area of 160 square rods or 43,560 square feet. In Corpus Juris Secundum, Vol. I, page 921, an acre is defined as "A quantity of land containing one hundred and sixty square rods of land in whatever shape; * * *". See also Black's Law Dictionary to the same effect.
The only testimony in the record is that of Eugene Sellers, Civil Engineer and Land Surveyor. He was called by plaintiffs and testified as an expert that given the description here at issue, he would survey the usual one square acre 208.71 feet by 208.71 feet out of the southeast corner of the 20 arpent tract. He based this on his experience of 10 years. He explained that if the acre was to be anything but square, the parties usually describe the irregular shape. Tr. 94. This is the only evidence in the record concerning shape of the tract.
Even though we are impressed by the forcefulness of defendant's argument, we are the more persuaded that plaintiffs' prior recorded Act of Exchange placed this lessee defendant on notice that Miller (who was both lessor to defendant and vendor to plaintiffs' ancestor in title) owned 20 arpents, less and except one acre in the southeast corner of said 20 arpents, bounded north and west by Miller and south and east by named property owners owning the adjoining tracts to the south and east.
The trial court relied on the cases of Brock v. E. McIlhenny's Son, 136 La. 903, 67 So. 951 (1915); Levy v. Gause, 112 La. 789, 36 So. 684 (1904); and Jackson v. Bernstein, 39 So.2d 120 (La.App. 2 Cir. 1948). All of these cases were concerned with descriptions in tax deeds.
In Brock, the Louisiana Supreme Court was considering a tax sale of 50 acres in the Northeast corner of 2165.56 acres. But this 2165.56 acres was composed of two tracts. One contained 379.52 acres and the other, located some four miles away, contained 1800 acres. Additionally, the fifty acres claimed by plaintiffs was not in the shape of a square. The Court held
"* * * A court cannot perform the function of selecting the shape of a tract of land of a given area in order that it may pass by a deed of the stated number of acres in a certain locality.
"Such a description as 50 acres of land in the northeast corner of two larger tracts is no designation at all. The *87 land supposed to be conveyed by such description cannot be identified." 136 La. 903, 905 and 906, 67 So. 951, 952.
Just a few lines earlier in the opinion, the Court noted:
"* * * Forty acres in the northeast corner of a regular section might be understood to mean the N.E. ¼ of the N. E. ¼, according to official survey, but 50 acres in the northeast corner of a regular section might as well mean a right angle triangle measuring 31.62 chains on its north and east boundary line as a square measuring 22.36 chains on each side."
The facts of and basis for deciding Brock are distinguished from the case before us in that the larger tract here is but a single tract and in this case, plaintiffs claim a square acre and the only evidence in the record supports plaintiffs' claim that the acre conveyed was in the shape of a square.
The description in the tax deed in Levy v. Gause conveyed property "assessed in the name of Thomas R. Crawford, 80 acres of land, more or less, a portion of the Locador Spanish grant in section 38, township 9, range 15 east, on West Pearl river, bounded S. by Antoine Provost and Herwig, W. by western boundary of said Spanish grant." (Emphasis added.) As reasons for voiding the tax sale, the Louisiana Supreme Court stated that "The quantity is uncertain, being 80 acres, more or less, and the northern and eastern boundaries are not given." 112 La. 789, 800, 36 So. 684, 688. Levy is distinguished in that we are here concerned with a definite quantity of land located in the southeast corner of a 20 arpent tract.
In Jackson v. Bernstein, the Court of Appeal considered the description in a tax sale which conveyed "7 acres in the SW corner of the NW¼ of NW¼, Sec. 11, Tp. 16 N., R. 9 E.". The Court stated:
"Defendants do not seriously contend that the description '7 acres in the Southwest corner' of the forty acre tract is susceptible of identification. As neither the shape of the seven acres nor the dimensions thereof are given, one is left to conjecture as to what land was intended to be sold by the tax collector, and purchased by the bidder. It is hornbook that unless the description of the land in a tax deed is sufficiently clear and definite that location on the ground of the land intended to be adjudicated is possible, the sale is subject to annullment for that reason. It is without effect." (Emphasis added.)
The Court cited and discussed the Brock case. Also cited, but not discussed were the cases of Stanley et al. v. Snell, 5 La. App. 635; Levy v. Gause et al., 112 La. 789, 790, 36 So. 684; Jackson v. Irion, 196 La. 728, 200 So. 18, 133 A.L.R. 566; Yuges Realty Ltd., v. Jefferson Parish Developers, Inc., 205 La. 1033, 18 So.2d 607. Since the decision in Jackson appears to be in point, we will examine these last cases to see if the facts were similar to those in Jackson.
The description in the tax deed in Stanley v. Snell was "* * * half acre in the northwest quarter of southeast quarter of southwest quarter * * *." This description gives no hint as to where the half acre can be found within the ten acre tract described. The description in the tax deed reviewed in Levy v. Gause is quoted hereinabove, and its holding was there distinguished. In Jackson v. Irion, the Louisiana Supreme Court held invalid a tax deed where the property was described only as "One City Lot in Eola". Again we find no hint as to where the lot is located within the Town. In Yuges Realty v. Jefferson Parish Developers, (a decision which does not support the result reached in Jackson) the Louisiana Supreme Court held valid several tax sales even though:
"There were slight discrepancies in the assessments and in the tax forfeitures as to distances, but this makes no material difference. The descriptions in the assessments *88 and in the tax forfeiture deeds are sufficient to enable the owner, or a surveyor, to identify the Patrick and Leininger properties on the ground." 205 La. 1033, 18 So.2d 607, 610.
Earlier in the opinion the Court cited its holding in Jackson v. Irion, but then stated:
"But the rule is equally as well settled that, where the description of the property in an assessment or tax sale, although imperfect, is reasonably sufficient to identify the property, or furnishes the means for identification, the limitation or prescriptive provision in the Constitution, designed to protect tax sales, cures all irregularities and nullities in the assessments and sales. Close v. Rowan, 171 La. 263, 130 So. 350; Baldwin Lumber Co. v. Dalferes, 138 La. 507, 524, 70 So. 493; Pierson v. Castell Land & Harbor Co., 159 La. 158, 105 So. 274; Board of Com'rs for Fifth Louisiana Levee District v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921." 18 So.2d 607, 609.
We find that the strict holding in Jackson v. Bernstein is not entirely supported by these authorities and that Jackson is an extension of the holding of the Brock case. The rule of the Jackson case has never been reviewed or cited by the Louisiana Supreme Court. Jackson is the only case (cited to us or that we have found) holding void a description of a certain acreage in the corner of a larger tract because it did not specifically state that the property conveyed was in the shape of a square. In Jackson, the court did not distinguish the earlier cases hereafter reviewed and followed.
If the case presently before us cannot be distinguished from Jackson (in that 1. We are not here concerned with a tax sale. 2. We are concerned with one acre rather than seven. 3. This description named the property owners on all four sides.), then we find that we must differ with our brothers of the Court of Appeal, Second Circuit.
The rule here applicable is that if the description is vague or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. White v. Ouachita Natural Gas Co., 177 La. 1052, 150 So. 15 (1933); Snelling v. Adair, 196 La. 624, 199 So. 782 (1940); and Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774 (1953). See also the numerous cases cited in these opinions.
In White, supra, the Louisiana Supreme Court upheld a description of a 200 acre tract included in a mineral lease which was lacking in accuracy of detail. The court considered the fact that lessor owned only 3,291.29 acres in Ouachita Parish (including the 200 acres not described in the lease) and that he was leasing 3,291.29 acres. The court found that it was patent on the face of the papers that he intended to lease all his holdings in Ouachita Parish.
At 150 So. 15, 17, the Court ruled that:
"We think the description was sufficient. `It suffices if the description be "such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary."' Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489, 492.
"Therefore, whilst an unrecorded deed can have no effect whatever as to third persons, the same is not true where the deed is recorded but contains only an inaccurate or faulty description of the property but not so inaccurate or faulty *89 as to be actually misleading. Hence when the only description in a mortgage was `one large property or tract at the corner of Orleans and Bourbon Streets' without any other boundaries given, this was held sufficient to put a purchaser on his guard. Roberts v. Bauer, 35 La.Ann. 453, citing City Bank v. Denham, 7 Rob. 39, and Ells v. Sims, 2 La.Ann. 251, 253. See, also, Lee v. Long, 166 La. 1084, 118 So. 320."
In Snelling v. Adair, supra, the Louisiana Supreme Court found valid the description "A certain tract of woodland * * * situated in the swamp between Bunkie and Eola and lying west of the Louisiana East and West Rail Road containing Thirty (30) acres more or less, and being bounded North by lands of Robert Tubre, South and East by lands of Robert D. Windes, and West by lands of Billy Moore." This was found to convey title to property lying east of the railroad and bounded by other owners, notwithstanding the fact that the land was described as being west of the railroad, and there were incorrect references to neighboring property owners. An abstractor testified that he could locate this 30 acres of property "by eliminating the uncertain parts and taking the certain parts" of the description. 199 So. 782, 789. Since "the property as described in the deed was susceptible of location and identification," this made the deed translative of title. 199 So. 782, 789. The rule was stated as follows:
"It is a settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. Thornhill v. Burthe, 29 La.Ann. 639; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; Suthon v. Laws, 127 La. 531, 53 So. 852; Suthon v. Viguerie, 127 La. 538, 53 So. 855; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Harrill v. Pitts, 194 La. 123, 193 So. 562; 13 Cyc. 627; and 36 Cyc. 591." 199 So. 782, 787.
In Knapp v. Jefferson-Plaquemines Drainage Dist., supra, the Louisiana Supreme Court found valid a description in a tax deed conveying:
"A certain tract of land situated on the right bank of the Mississippi River, and designated as 768.16/100 acres. Parcel of land in T. 15 S. R 24 E. West of River."
The Court stated:
"In the jurisprudence of this state it is well settled and established that, where a tax sale is made under an assessment in the name of the owner and an error is made in the description of the land intended to be assessed, the tax sale under such assessment is valid if, notwithstanding the error in description, the land can be reasonably identified by the assessment or description as found in the tax deed, or if the description therein furnishes the means for such identification. Further, if a description of the property intended to be assessed or sold is so indefinite and uncertain as to be defective, resort may be had to evidence outside the assessment roll or tax deed to identify the property, provided such evidence establishes unmistakably the identity of the property. The cases generally hinge on the point as to whether the description is such as to enable interested persons to identify the property. Tillery v. Fuller, 190 La. 586, 182 So. 683, and the numerous authorities therein cited; Jackson v. Irion, 196 La. 728, 200 So. 18, 133 A.L.R. 566; Yuges Realty, Ltd., v. Jefferson Parish Developers, Inc., 205 La. 1033, 18 So.2d 607." 68 So.2d 774, 778.
*90 The description (of one acre located in the southeast corner of a 20 arpent tract, more or less, measuring 2½ arpents by 8 arpents, more or less, and bounded south and east by the named property owners on the south and east, and north and west by vendor, the owner of the remainder of the twenty arpent tract) is vague, but not so vague or erroneous as those held valid in the cited cases.
The extrinsic evidence admissible under the rules of evidence, proved that the one acre conveyed to plaintiffs' ancestor in title was in the shape of a square.
Having found that plaintiffs are the owners of the one square acre located in the southeast corner of this twenty arpent tract, we pass to the second issue. Defendant has pled the prescription of one, three and five years against plaintiffs' demand, but the one year prescription applies.
The cases of Liles v. Producers' Oil Company, 155 La. 385, 99 So. 339 (1924) and Liles v. Texas Co., 166 La. 293, 117 So. 229 (1928) are in point. There the defendant oil company owned a mineral lease purportedly covering the full property, but it was later determined that plaintiff had an outstanding 1/5 interest in the land, and suit was brought to recover the value of 1/5 of the minerals produced from the property. It was held that the demand therein was ex delicto and subject to the prescription of one year established by LSA-C.C. Article 3536.
This suit is patterned after the Liles cases and is not a suit in quasi contract. Under the holding of those cases, plaintiffs' demand is one in tort subject to one year prescription. LSA-C.C. Article 3536.
The one acre tract shares in production only by virtue of certain Conservation units. The effective dates of those units are:
Champagne Unit 5March 12, 1957
School Board West Sand Unit 7July 1, 1957
Derouen Sand UnitOctober 1, 1958.
On February 3, 1967, plaintiffs addressed a letter to defendant showing that plaintiffs were aware of the present claim as far back as August 18, 1960. Prescription has accrued against plaintiffs' demand except for production since April 14, 1966, which is one year prior to the April 14, 1967 institution of this suit.
The third issue concerns plaintiffs' claim for recovery without deduction for drilling and operating costs. Plaintiffs seek to invoke the provisions of LSA-R.S. 30:103.2. This claim is denied.
This is a penal statute, requiring strict construction. The penalty is inapplicable because plaintiffs failed to comply with the express conditions therein set forth.
On February 3, 1967, plaintiff sent a registered letter to defendant reciting (1) that on August 18, 1960 they had requested defendant to advise what it was doing with the share of production enuring to the one acre in controversy, and (2) making demand that they be furnished within 10 days with an itemized statement of production from this acre. This does not meet the strict requirements of the statute.
The statute expressly requires the owner of an unleased interest to request the Operator to furnish a sworn, detailed itemized statement showing the costs of drilling operations on the land and penalizes the Operator only when it has failed to furnish such information within (1) 90 days from the completion of the well, and (2) fifteen additional calendar days from the date of receipt of written notice by registered mail from the owner of the unleased interest calling the Operator's attention to the fact that it has failed to comply with the provisions of that statute.
*91 Plaintiffs inquired only about production. At no time did they request a statement of costs, and at no time did they write the Operator pointing out that it had failed to comply with the statute.
It is therefore ordered, adjudged and decreed that the Judgment of the trial court is reversed and set aside.
It is further ordered, adjudged and decreed that defendant Phillips Petroleum Company recognize plaintiffs as owner of one acre square located in the southeast corner of a certain tract of land containing 20 arpents, more or less, measuring 2½ arpents east and west by 8 arpents north and south, more or less, and bounded North by P. Evilier Broussard, or assigns, east by William Jones et als, South by Rose Hill and West by Jessie White, said one acre of land being bounded north by Dr. Preston J. Miller, east by William Jones, et als, South by Rose Hill and West by Dr. Preston J. Miller, and being a portion of the same property acquired by Preston J. Miller from Theodore Broussard, per deed recorded in Volume 87 of Conveyances at folio 403, under Entry No. 42026, Records of Vermilion Parish, Louisiana, in the proportions of one/sixth to Madeline O'Dea; and five/twenty-fourths each to Joseph D. White, Israel White, Nora White and Amour White.
It is further ordered, adjudged and decreed that defendant Phillips Petroleum Company account to plaintiffs for all minerals produced from plaintiffs' acre on and after April 14, 1966, and pay to plaintiffs the value of all minerals produced therefrom on and after April 14, 1966, less a proportionate share of drilling and operating costs which have been incurred on and after April 14, 1966.
All costs incurred in both the trial court and on appeal are to be paid by defendant appellee.
Reversed and rendered.
TATE, Judge (concurring).
Characterization of the plaintiffs' action was neither briefed nor argued by counsel. Therefore, with some reluctance, I concur in the opinion of the majority that this suit is a demand ex delictu, and that, in accordance with the cases of Liles v. Barnhart, 152 La. 419, 93 So. 490 (1922), and Liles v. Producers' Oil Co., 155 La. 385, 99 So. 339 (1924), it is subject to the prescription of one year established by Civil Code Article 3536.[1]
This result, it must be noted, flows from the characterization of plaintiffs' action as delictual. The Liles cases acknowledge the existence of another remedy: Had plaintiffs' action been characterized as one based on unjust enrichment (quasi contract), the action to recover the unlawful gain would be barred only by the prescription of ten years established by Civil Code Article 3544. See Yiannopoulos, Civil Law Property, Section 148 (1966).
Under the Louisiana system of fact pleading, CCP Article 854, all that is required of a plaintiff is that he allege the material facts constituting a cause of action. The courts are required, in their judgment, to "grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter *92 contain no prayer for general and equitable relief." CCP Article 862.
The 1960 Code of Civil Procedure, which has as its ultimate end substantial justice rather than procedural technicality, CCP Article 865, sought to suppress "the harsh and unduly technical `theory of the case' doctrine in Louisiana, under which the litigant must select a theory of his case or defense and adhere to it throughout the litigation." CCP Article 862, Comment b.
In cases such as this one, a property owner who pleads and proves the necessary facts should be allowed to recover under any available theory, whether tort, quasi contract, or even revendication. To bar recovery simply by strictly construing the pleadings is to abandon the spirit of the 1960 Code of Civil Procedure.
If a plausible construction of the pleadings here would permit recovery (and I am not fully convinced that these pleadings could not be so construed), to restrict plaintiff to a remedy in tort is to return to the Code-rejected concept of the "theory of the case." See Yiannopoulos, Civil Law Property, Section 148, pp. 453-454 (1966). As Professor Yiannopoulos concludes, with especial reference to the type of issue before us, p. 453: "When the plaintiff has available two or more actions based on different theories of recovery, it would seem that he should be entitled to the appropriate relief without being bound to make an election of remedies in his petition."[2]
I concur in our majority holding, however, because it is narrowly restricted to the conclusion that, under the unopposed construction of the present plaintiffs' petition as seeking delictual relief, we are not presented with the issues raised by this concurring opinion.
On Application for Rehearing.
En Banc. Rehearing denied.
SAVOY, J., is of the opinion that a rehearing should be granted under the doctrine of McDuffie v. Walker, 125 La. 152, 51 So. 100.
NOTES
[1] Even so, if the plaintiff's recovery is based on tort, deduction of expenses is allowed under the jurisprudence only if the mineral operations were undertaken in good faith. See Yiannopoulos, Civil Law Property, Section 20, p. 55; Section 137, p. 418, notes 239, 241 (1966). See, e. g.: good faith: Huckabay v. Texas Co., 227 La. 191, 78 So.2d 829 (1959); Wetherbee v. Railroad Lands Co., 153 La. 1059, 97 So. 40, 41 (1923); Martel v. Jennings-Heywood Oil Syndicate, 114 La. 351, 38 So. 253 (1905); Arkansas Fuel Oil Corp. v. Weber, 149 So.2d 101 (La.App.2d Cir. 1963); Scott v. Hunt Oil Co., 152 So.2d 599 (La.App.2d Cir. 1963) (dictum); bad faith: State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 (1935).
[2] See also, for critical discussion of pre-1960 jurisprudence, Comment, Prescription, Classification, and Concurrence of Obligations, 36 Tul.L.Rev. 556 (1962).